Fred A. CRUZ et al., Plaintiffs,

Enrique B. Andrade and Isaias Lara, Plaintiffs–Appellants,

v.

W. B. (Bill) HAUCK et al., Defendants–Appellees.

No. 79–3283.

United States Court of Appeals, Fifth Circuit.

Oct. 8, 1980.

Lonnie W. Duke, San Antonio, Tex., Frances T. Freeman Cruz, Washington, D.C., for plaintiffs–appellants.

Michael P. Hodge, Asst. Dist. Atty., San Antonio, Tex., for defendants–appellees.

Before GOLDBERG, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

This protracted litigation, centering around repeated attempts to obtain meaningful access to the courts on behalf of indigent prisoners in Bexar County Jail in San Antonio, Texas, has been in progress since 1970. Although the named plaintiffs are no longer incarcerated in the jail, they seek to represent a class consisting of all indigent prisoners presently so incarcerated. The plaintiffs are before us for the fourth time, and they appeal from the district court's refusal to certify the class and its determination that the entire suit has now become moot. We find merit in the plaintiffs' contentions and again reverse and remand.

*Context Facts*

This suit was initially filed by the plaintiffs pro se [1] as a class action more than ten years ago, on May 4, 1970, seeking declaratory and injunctive relief under 42 U.S.C. § 1983 against the enforcement of jail regulations restricting inmates' use and possession of legal materials.[2] In 1975, on the third appeal to this court, we held that the rules approved by the district court were constitutional if the inmates had adequate access to the courts through counsel, as the district court had held. However, because "the findings of fact [did] not demonstrate that inmates wishing to file either habeas corpus petitions challenging the constitu-

---

1. The plaintiffs have been represented by volunteer counsel since shortly after suit was filed, and they are presently represented by appointed counsel as well.

2. The district court's initial dismissal of the complaint was vacated and remanded for further consideration in light of *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). *Cruz v. Hauck*, 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971).

Upon remand, the district court approved three rules offered by the defendants to govern

the library, but we remanded for an evidentiary hearing. *Cruz v. Hauck*, 475 F.2d 475 (5th Cir. 1973).

An evidentiary hearing was subsequently held before a United States magistrate, but only two minor changes were made in the proposed rules, and the district court held that there was adequate access to the courts because "all indigent inmates of the Bexar County Jail are afforded the services of court–appointed counsel." Conclusion of Law 3, quoted at 515 F.2d 322, 331 (5th Cir. 1975).

tionality of their incarceration, or civil rights actions challenging the conditions of their confinement have access to counsel," we remand "for an evidentiary hearing to determine whether all inmates of the jail have adequate access to the courts through means other than by access to legal materials." *Cruz v. Hauck*, 515 F.2d 322, 332 (5th Cir. 1975).

In our opinion we noted that the named plaintiffs were apparently no longer confined in the jail and that there had been no certification of the class. However, we stated that "[t]he parties . . . have treated the litigation as though the district court made an appropriate certification," *id.* at 325 n.1, and we held that a case or controversy existed because the "legal issues presented continue to affect the prisoners in the jail," *id.*

Following our last remand in this case, the district judge referred pretrial and discovery matters to the United States magistrate,[3] and the magistrate ordered the plaintiffs to replead their cause of action. The plaintiffs did so, alleging that they represented the class of all indigent inmates of the Bexar County Jail and contending that the class members' right to access to the courts was being violated. The plaintiffs alleged that since there was no adequate access to the courts through means other than by access to legal materials, the defendants should establish "a well-equipped law library for . . . use . . . at all reasonable times . . . , staffed by a trained law librarian." The defendants, in response, denied the exist-

ence of the class and contended that in any event the plaintiffs were not proper representatives of such a class because their claims were moot since they were no longer confined in the Bexar County Jail.

Shortly thereafter, the plaintiffs moved for certification of the class, relying on language in our prior opinion and contending that the issues were "capable of repetition, yet evading review." Three days after moving for certification, the plaintiffs also moved to add John Crawford, who was at that time incarcerated in the jail, as an additional named plaintiff. The district judge, however, held that Crawford had already requested a library in a prior suit[4] and that therefore the issue was res judicata as to him. The judge also stated that the plaintiffs had given "no good reason why . . . Crawford should be added as a party plaintiff" and that it was apparent that plaintiffs were trying to join Crawford "solely to bolster" their motion for class certification.

On October 13, 1976, the defendants moved to dismiss the suit as moot on the ground that a library had been established at the jail four months earlier.[5] Although applauding the establishment of the library, the plaintiffs responded that they still did not have adequate access to the courts because the library was too small and the hours were too short, and they argued that there were many inmates who must still rely on counsel for access to the courts because they did not have the education, knowledge, or skill necessary to use the new library.

3. The plaintiffs objected to the referral to the magistrate because of the statement in our prior opinion that the "district judge personally should conduct the proceedings on remand" "[i]n view of the grossly protracted nature of these proceedings, and to forestall any further appeals by either litigant." 515 F.2d at 332 n.20. However, the district judge overruled the plaintiffs' objections and said that he would personally hold an evidentiary hearing later in the proceedings. Nevertheless, the only evidentiary hearing was held before the magistrate.

4. In the prior suit, Crawford had not initially complained about the lack of a law library. However, in a supplemental pleading, Crawford

had complained of destruction of legal materials and, according to the order of dismissal, had requested that the prisoners be furnished with a law library. This request was dismissed on the ground that a library was to be established as soon as the new wing of the jail was completed.

5. The defendants' motion to dismiss came only two months after the denial of the motion to join Crawford as a named plaintiff. The motion to dismiss made it clear that a library had already been in existence at the time the motion to join Crawford had been denied, thereby retroactively putting in question the validity of the res judicata defense.

Eleven months later, in September of 1977, the magistrate set a date for a hearing on the plaintiffs' motion for certification and the defendants' motion to dismiss. At that time, the magistrate denied a second motion by the plaintiffs to join John Crawford as an additional named plaintiff. This motion was denied on the ground that Crawford was not an inhabitant of the Bexar County Jail.[6]

When the magistrate submitted his findings and recommendations, he found that the alleged class action was moot because the class had never been certified and because the inmates had adequate access to the courts through the use of an adequate law library and also through the help of writ-writers and assistance of counsel. He recommended that the Motion to Dismiss be granted and that the Motion to Certify be either denied or dismissed.

The plaintiffs timely filed their objections to the magistrate's findings and contended: 1) that mere delay does not prevent certification; 2) that a live controversy still existed because the library did not have the Federal Supplement, did not have trained personnel, did not accommodate enough inmates, and was therefore still inadequate; 3) that one of the named plaintiffs had been back in jail after having been released on parole and that therefore the issues were "capable of repetition, yet evading review"; 4) that not all inmates were capable of using the library (especially not in San Antonio where there were "numerous unlettered non–English–speaking confinees"); and 5) that not *all* inmates had access to the courts through means other than access to legal materials. The district judge remanded to the magistrate for consideration of the plaintiffs' objections.

In the magistrate's "New or Amended Findings," he stated that the failure to obtain certification was the plaintiffs' fault because they had "kept the litigation on appeal almost since its inception" and had "wholly neglected to obtain a ruling on their class issue question until time had passed it up." He also stated that the action could not be maintained as a class action because there was no longer any case or controversy since an adequate law library had been established. Further, the magistrate found that the lack of the Federal Supplement was de minimus, that there was no requirement to have trained library personnel, and that therefore there was no live controversy between the defendants and the alleged class members.

The plaintiffs again objected, on the following grounds: 1) that the magistrate had not acknowledged that Mr. Andrade, one of the named plaintiffs had been confined in the jail from March to September of 1977;[7] 2) that the library was inadequate because of the untrained staff, the limited access, and the lack of the Federal Supplement; 3) that the library did not provide access to the courts for those persons lacking the necessary literacy skills to use it; and 4) that the merits of the plaintiffs' cause of action, i. e., whether their only possible claims for relief had become moot, was not a proper consideration in determining whether to certify the class.

The district judge approved and adopted the findings of the magistrate, and he added that "there [was] no guarantee that the two remaining plaintiffs [would] continue to adequately represent the class" since they were no longer in jail and therefore had no common interest in the class. The

---

6. At the hearing on the Motion to Certify and the Motion to Dismiss, on October 13, 1977, Crawford testified that he had been in the jail from July of 1974 until the end of 1976, that he had been returned to the jail on September 23, 1977, and that he was incarcerated in the jail at the time of the hearing. Record on Appeal, Volume IV at 121–22, 131–32. Crawford's return to the jail on September 23, 1977, was at his own request, but it was in conjunction with a child custody suit that was not related to the

instant case. In contrast, two of the named plaintiffs, Lara and Andrade, were also in the jail at the time of the hearing, but they were only there because of the certification hearing in this case. See note 10, *infra*.

7. The plaintiffs actually said that Mr. Andrade had been confined from March to September of *1976*, but the record seems to indicate that he was actually confined during *1977*. See note 8, *infra*.

district judge relied on the reasons given by the magistrate in holding that the issue was not capable of repetition, yet evading review, and the only modification he made was to acknowledge that the plaintiff Andrade "was also present in Bexar County Jail for an additional period of time in either 1976 or 1977." [8]

The plaintiffs' appeal from the ruling of the district court on two grounds: 1) that class certification was improperly denied; and 2) that the class action seeking meaningful access to the courts is not moot.

### I. Class Certification

The denial of class certification was essentially based on two grounds: 1) that the *individual claims of the named plaintiffs* were moot because they were no longer in jail; and 2) that the *claim for relief on behalf of the class* was moot because of the establishment of the library. The plaintiffs initially contend that it was improper to consider the alleged mootness of the claims of the class in determining whether to certify the action as a class action. We agree.

As this court stated in *Miller v. Mackey International, Inc.,* 452 F.2d 424, 427 (5th Cir. 1971):

> In determining the propriety of a class action, the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.

*Accord*: *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1201 (6th Cir. 1974). It is not appropriate to decide a case on its merits before determining whether it can be certified as a class action. Under the facts of this case, the district court's dismissal on the ground of mootness, similar to a dismissal on the ground of no cause of action, was in essence a decision on the merits; the plaintiffs asked for further relief on behalf of the class, but they were told that the inmates had received all the relief that they were legally entitled to. Consequently, it was inappropriate for the district judge to consider the alleged mootness of the claims of the putative class members in determining whether to grant certification.

The plaintiffs next contend that it was improper to deny certification on the ground that the individual claims of the named plaintiffs were moot. Again, we agree.

Under Article III of the Constitution the jurisdiction of the federal courts depends on the existence of a "case or controversy." In other words, the plaintiffs must initially have standing to bring a suit, and they must continue to have standing throughout the pendency of the litigation, *i. e.,* their claims must not become moot. *See United States Parole Com'n v. Geraghty,* 445 U.S. 388, 398, 100 S.Ct. 1202, 1208– 09, 63 L.Ed.2d 479 (1980); Monaghan, *Constitutional Adjudication: The Who and When,* 82 Yale L.J. 1363, 1384 (1973).

Nevertheless, there is a narrow class of cases in which the injury com-

---

8. There is some confusion as to when plaintiff Andrade returned to the jail, but the record seems to indicate that he was incarcerated for the second time between March 8, 1977, and September 26, 1977. At the certification hearing, the following exchange took place:

> Q When you were arrested [for violating parole], were you put back into the Bexar County Jail?
> A Yes, sir.
> Q How long were you in at that time?
> A I stayed there since March the 8th until, I believe, the 26th of September.
> Q Of 1976?
> A Yes, sir.
> Q From March through September of 1976?

> A This time, yes, sir.
>
> Q *That was in 1976, is that correct?*
> A *No it's '77.*
> Q *This all occurred in 1977?*
> A *Yes, sir.*
> Q *I had my years wrong then. That's from March through September?*
> A *Yes.*

Record on Appeal, Volume IV at 82–83 (italics ours). Although the record is not completely clear, we will assume that Andrade was incarcerated during 1977 rather than 1976. Otherwise, there would have been a named plaintiff in jail when the plaintiffs moved for certification on May 28, 1976.

plained of is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. Interstate Commerce Commission*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). When the plaintiffs themselves are likely to suffer the same injury again, there is a continuing case or controversy that satisfies the requirements of Article III and allows the plaintiffs to continue their suit even though they are not then suffering the injury complained of. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie*, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Southern Pacific Terminal Co., supra.* Furthermore, even if the named plaintiffs themselves are not likely to suffer the same injury again, a class action "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs," *Sosna v. Iowa*, 419 U.S. 393, 401, 95 S.Ct. 553, 558, 4 L.Ed.2d 532 (1975), if the class has been properly certified and the issue is "capable of repetition, yet evading review." In such a case, there is a continuing case or controversy between the defendants and the unnamed members of the class, "even though the claim[s] of the named plaintiff[s] [have] become moot." *Sosna v. Iowa, supra,* 419 U.S. at 402, 95 S.Ct. at 559. *See Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1976); *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

■ Before determining whether this case belongs to that narrow class of cases in which the issues are "capable of repetition, yet evading review," we emphasize that the issues of mootness that are present in this case have arisen because *all* of the parties to this litigation failed in their duty to promptly seek a ruling on class certification. As discussed in our opinion in *Satterwhite v. City of Greenville,* 578 F.2d 987, 998–99 (5th Cir. 1978) (en banc), *vacated and remanded,* 445 U.S. 940, 100 S.Ct.

1334, 63 L.Ed.2d 773 (1980), the plaintiffs' counsel had the primary responsibility to press for a certification hearing, but the defendants had a duty to promptly present any objections to class status, and the judge had an independent duty to hold a certification hearing "as soon as practicable" under Rule 23. The plaintiffs should have moved for a certification hearing as soon as they filed suit, but this litigation has always been treated as a class action, as noted in our last opinion in this case, 515 F.2d at 325 n. 1, and both the judge and the defendants must shoulder some of the blame for the posture of this case.

If a certification hearing had been promptly held while the named plaintiffs were still confined in the Bexar County Jail, it might not have been necessary to determine whether the actions complained of are capable of being repeated, without review, against the unnamed members of the class. *See Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 1717, 52 L.Ed.2d 184 (1977); *Franks v. Bowman Transportation Co., Inc.,* 424 U.S. 747, 96 S.Ct. 1251, 1259–60, 47 L.Ed.2d 444 (1976).[9] However, there was no motion for certification until after the named plaintiffs were no longer in the jail. The plaintiffs nevertheless contend that the action is not moot because: 1) the named plaintiffs themselves are likely to suffer the same injury again; 2) there was a live plaintiff at the time that certification was ruled on or should have been ruled on; and 3) this case presents an exception to the normal requirement that the named plaintiffs must be a member of the class at the time the class is certified.

■ With respect to the plaintiffs' first contention, the particular facts of this case justify a finding that the individual claims of the named plaintiffs are "capable of repetition, yet evading review." To begin with, confinement in a jail is by its nature temporary. *See Bell v. Wolfish,* 441 U.S.

---

**9.** In *Franks* the Supreme Court stated that "[g]iven a properly certified class action, . . . mootness turns on whether, in the specific circumstances of the given case at the time it is before this Court, [there exists] an adversary relationship sufficient to fulfill [the function of assuring the concrete adverseness that sharpens the issues before the court]." 424 U.S. at 755–56, 96 S.Ct. at 1260. The Court held that it was not essential that the issue be one "capable of repetition, yet evading review." *Id.* at 754, 96 S.Ct. at 1259.

520, 526, 99 S.Ct. 1861, 1867 n. 5, 60 L.Ed.2d 447 (1979); *Gerstein v. Pugh, supra,* 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11. Even more importantly, the record graphically illustrates that in this case the threat of injury to the named plaintiffs themselves was " 'real and immediate' not 'conjectural' or 'hypothetical.' " *Sosna v. Iowa, supra,* 419 U.S. at 403, 95 S.Ct. at 559, (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), and *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 960–61, 22 L.Ed.2d 113 (1969)). The record indicates that one of the named plaintiffs, Mr. Andrade, was back in the jail during the pendency of the motion for certification, although he was again sent to a more permanent facility before the motion was ruled upon.[10] Furthermore, the inmate whom the plaintiffs attempted to join as an additional named plaintiff, Mr. Crawford, was also in and out of the jail on more than one occasion.[11] Under the facts of this case, the individual claims of the named plaintiffs were "capable of repetition, yet evading review," and there was a continuing case or controversy before the district court. Consequently, it was error to deny certification on the ground that the claims of the named plaintiffs had become moot.[12]

▮ The plaintiffs' second and third contentions also have merit. On the one hand, had the certification hearing been held sooner, Mr. Andrade would have been in the jail at the time of certification, and there would have been no question concerning the appropriateness of granting class action status. The motion for certification was made on May 28, 1976, but the certification hearing was not held until October 19, 1977, more than one year later. Had the certification hearing been held and the issue ruled upon during the six–month period that Mr. Andrade was back in jail, between March 8, 1977 and September 26, 1977,[13] there would have been no mootness problems. There appears to have been an unreasonable delay in ruling on the motion for certification, and we do not believe that this delay can properly be relied on to justify dismissing an action that was initially filed as a class action, that has been treated as a class action by all concerned, and that has been diligently litigated for more than ten years.

Even if it is argued that the district court could not reasonably have been expected to hold the certification hearing any sooner, the following language from *Sosna v. Iowa, supra,* becomes applicable.

> There may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the case and especially the reality of the claim that otherwise the issue would evade review.

419 U.S. at 402 n. 11, 95 S.Ct. at 559 n. 11. In this case, it would have been appropriate to have certification "relate back" to the filing of the plaintiffs' repleaded complaint. In our last opinion we remanded for further proceedings, and we held that the case was not moot despite the lack of class certification because there was a continuing controversy and because all parties had treated the litigation as a class action since its

---

10. The record indicates that Mr. Andrade left the jail on September 26, 1977 and returned to the jail for the certification hearing on October 6, 1977. See notes 7 and 8, *supra.*

11. See note 6, *supra.*

12. The ruling that the presence of the library satisfied and thereby mooted all the claims of the class was in essence a determination on the merits that the inmates had received all that they were legally entitled to. This was a premature decision on the merits; the plaintiffs contend that the library supplied is not ade-

quate. This presents a continuing, live controversy. Furthermore, the ruling that because the plaintiffs' complaints had been satisfied, they were not "capable of repetition" was erroneous. Whatever the merits of the plaintiffs' contentions, the facts of this case illustrate that there was a substantial risk that the short duration of plaintiffs' stay in the jail might prevent them from ever presenting their substantive claims.

13. See notes 7 and 8, *supra.*

inception five years earlier. 515 F.2d at 325 n. 1. The plaintiffs were then required to replead their complaint, and they immediately moved for class certification. By the time the hearing was held, however, Mr. Andrade had gone back into the jail and then left again, and Mr. Crawford, whom the plaintiffs attempted to join as a named plaintiff, had also left the jail. Under the facts of this case, either the certification hearing was unreasonably delayed or the hearing was held as soon as possible and certification should have been allowed to "relate back." In either situation, certification was improperly denied.

It is true that at the time the repleaded complaint was filed and the motion for certification made, none of the named plaintiffs were in the jail. However, aside from the fact that the claims of the named plaintiffs were "capable of repetition, yet evading review," the plaintiffs also attempted to add a named plaintiff who was confined in the jail. This motion was initially denied on the ground of res judicata. Without deciding the correctness of that ruling,[14] we note that shortly after the motion to add Mr. Crawford was denied, it became clear that the plaintiffs were seeking relief that had never been ruled on in Mr. Crawford's case. At most, Mr. Crawford, in his prior suit, had requested the *establishment* of a law library at the jail. However, the defendants' motion to dismiss indicated that a library had been established at the jail four months previously, *i. e.*, around June of 1976, two months before the motion to join

Mr. Crawford was denied. As soon as it became clear that the plaintiffs sought relief in addition to the establishment of a law library, it should have also become clear that the relief requested by the plaintiffs was not the same relief that had been requested in Mr. Crawford's previous suit. Perhaps it was not the obligation of the district judge to reconsider his ruling *sua sponte*,[15] but these facts should have been considered when the plaintiffs' second motion to join Mr. Crawford was denied on the ground that he was no longer confined in the jail. At the very least, it would have been appropriate for the magistrate to reconsider the denial of the second motion to join Mr. Crawford when it became clear at the certification hearing that Mr. Crawford was again confined in the jail and had been since September 23, 1977, only two and one–half weeks after the second motion to join him as a named plaintiff had been denied.[16]

██ In summary, we are convinced that the denial of certification was improper. The plaintiffs have vigorously litigated this case for more than ten years, and they moved for certification of the class immediately after repleading their complaint. Aside from the fact that this case was treated as a class action by all concerned until it had been in progress more than five years, the facts of this case make it clear that the plaintiffs' claims are "capable of repetition, yet evading review." [17] Furthermore, the plaintiffs properly tried twice to

---

14. Although it is not necessary to our decision in this case, we have serious reservations about whether the doctrine of res judicata barred Mr. Crawford from serving as a representative of the class. The library issue had at most been peripherally mentioned amidst a number of issues raised in Mr. Crawford's pro se complaint, and it was only mentioned in a supplemental pleading that apparently primarily complained of destruction of legal materials. Furthermore, there is no indication that Mr. Crawford ever sought a law library as a means of obtaining his right to meaningful access to the courts. Even if the issue had been sufficiently presented to warrant a defense of res judicata to another individual suit by Mr. Crawford, we doubt that Mr. Crawford was thereby precluded from representing a class that sought to

obtain relief that would directly benefit Mr. Crawford by providing *all* inmates with access to the courts.

15. It can be argued, however, that once it became known that the library had been in existence at the time the motion to join Mr. Crawford had been denied, the judge should have taken some action on his own motion. At the time of the denial of the motion, the true facts, if known to the district judge, would not have supported a defense of res judicata.

16. The second motion to join Mr. Crawford had been denied on September 6, 1977.

17. See notes 6, 7, and 8, *supra*.

add an additional named plaintiff.[18] Moreover, had the certification hearing been held within a reasonable time, one of the named plaintiffs would have been in jail and there would have been no question about the propriety of certifying the class. In view of all these circumstances, the denial of class certification was erroneous, and we must again reverse and remand.

## II. *Mootness of the Class's Claims*

The magistrate and the district judge partially relied on the alleged mootness of the class's cause of action in determining to deny certification. As we have discussed, this was erroneous, and the improper denial of certification that resulted requires us to remand this case again. The district judge had no authority to evaluate the merits of the claims of the unnamed members of the class in ruling on certification, and once he had denied certification, he could not make a binding ruling concerning claims that were allegedly not even before him. The plaintiffs are entitled to an evidentiary hearing on the merits of their claims before the district judge.[19]

## III. *Observations with Regard to the Remand*

Despite our decision to remand, judicial efficiency might be served by some discussion of the conclusions indicated by the lower court as to the merits of the named plaintiffs' attempts to obtain meaningful access to the courts on behalf of the members of the class.

As we stated in our prior opinion, "the lodestar which guides our course" "is the right of access to the courts." 515 F.2d at 331. In *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Despite the establishment of the library at the jail, the plaintiffs contend that they do not yet have meaningful access to the courts.

In our last remand, cited above, we stated, 515 F.2d 322–32:

> Reluctant as we are to remand again, these deficiencies compel us to return the case to the district court for an evidentiary hearing to determine whether all inmates of the jail have adequate access to the courts through means other than by access to legal materials. The burden of proof of demonstrating adequate alternative means is on the jail authorities. *Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971). The record on remand should clearly demonstrate compliance by the defendants with their burden. If all inmates do have such access, the rules approved by the district court are constitutionally adequate, subject to the modifications we make below. If *all* inmates do not have such access, the court should devise a plan ensuring adequate entry to the courts, either by reasonable access to attorneys, *or* by reasonable access to legal materials, *or* by any other reasonable means the district court may devise. [Italics supplied.]

> .   .   .   .   .   .

> [I]n determining whether all inmates have adequate access to the courts, the district court need not consider those inmates whose confinement is of a very temporary nature or for purposes of transfer to other institutions. The district judge should have little difficulty, realizing the fundamental nature of the right of access, in determining those cases where the brevity of confinement does not permit sufficient time for prisoners to petition the courts.

---

18. As indicated in *Silva v. Vowell*, 621 F.2d 640 (5th Cir. 1980), adding a "live" named plaintiff is exactly what the plaintiffs should have tried to do.

19. Despite the statement in our prior opinion that the district judge should personally conduct the proceedings in this case, this was not done. On remand the plaintiffs are entitled to an evidentiary hearing *before the district judge.*

The plaintiffs argue with some merit that, despite these instructions binding on the remand, the magistrate's hearing and the district court findings on the remand did not address the underlying constitutional values of meaningful access to the courts in the light of the considerations expressed by our opinion remanding for a hearing for such purpose. Specifically, the plaintiffs raise the following deficiencies:

(1) The plaintiffs contended at trial that their access to the library was inadequate because they were only allowed to visit the library once a week for about two or three hours, but the lower court held that this was sufficient. We have some reservations about whether this amount of time is adequate to do meaningful legal research. *See* *Williams v. Leeke*, 584 F.2d 1336 (4th Cir. 1978). However, at oral argument we were informed that the library hours have been expanded since the trial. The district judge should reconsider this issue at the evidentiary hearing on remand, and we need say only that the paramount consideration is whether the hours of availability are sufficient to provide time for *meaningful* legal research. Of course, if paralegal assistance (through law students or otherwise) is provided, lesser time may be sufficient for research purposes.

(2) The plaintiffs also contend that the library is inadequate because the Federal Supplement is absent. Their contention may have merit. The Federal Supplement, from 1960 on, was included in the list of books that was found adequate in *Bounds*, and this list was said to be in accordance with "a list approved as the *minimum* collection for prison law libraries" by various legal societies. 430 U.S. at 819 n. 4, 97 S.Ct. at 1493, n. 4 (italics ours). The district court erred when it said, without explication, that the absence of the Federal Supplement from a library for 700 prisoners was almost de minimis. Many important prisoner rights cases are decided in and go no farther than the district court, and the Federal Supplement from 1960 or so on should probably be available in an adequate large prison law library. The statement by the magistrate that it is not unreasonable to believe that the Federal Supplement will eventually be provided is irrelevant.

(3) More significantly, the plaintiffs further contend that the library is inadequate because there is no trained law librarian or paralegal to assist the inmates in their legal research,[20] it being remembered that the magistrate's finding (approved by the district court) considered that the physical presence and availability of the library sufficed for those inmates unable to secure legal assistance. Again, the plaintiffs' contention may have some merit. The central question in evaluating whether a law library adequately provides meaningful access to the courts is whether the facility will enable the prisoners to fairly present their complaints to a district court. It is not enough simply to say the books are there, when the plaintiffs contend that they do not have the assistance necessary to use the books properly. All of the circumstances must be evaluated in determining the adequacy of a library, and the district court erred by holding that a prison library without any assistance in its use sufficed to provide access to the courts for all the prisoners detained. Consequently, on remand, the district judge should carefully consider the plaintiffs' contention that the library cannot be adequately used without at least

---

20. The evidence shows that the librarian ("Research Center Co-ordinator") is a high school graduate with supervision over both the general library and the law library. Two weeks before the hearing a full-time clerical assistant had been added to her staff. The librarian's duties, aside from record keeping, were to help check out books as requested by inmates and to schedule their use of the library within the (limited) time available. She admitted that the inmates on not–unusual occasions came down to use the law library but soon asked to return to their cells, because they did not know what books to look for or how to find out how to use them. She also admitted that she herself had no library or paralegal training, so that (although she knows the titles and the locations of the books) she did not understand their use. (See, Tr. Evid., Vol. IV, p. 184: "*Q.* Do you know what these books are? *A.* I know, but I don't understand them. No, I don't do any legal research.")

some type of paralegal or trained paralegal librarian assistance in its use.[21]

(4) Along similar lines, the plaintiffs argue that even if the library were adequate, there are inmates who must still rely on the assistance of persons trained in the law for access to the courts because these inmates lack the educational and linguistic skills essential to using the library facilities. On remand, the district judge should consider this contention. Although *Bounds* says that either an adequate law library *or* assistance from persons trained in the law may satisfy the fundamental constitutional right to access to the courts, the fundamental concern is still whether the inmates have *meaningful* access to the courts. Library books, even if "adequate" in number, cannot provide access to the courts for those persons who do not speak English or who are illiterate. Library–use assistance might solve the problem presented. Perhaps, instead, the need might be met by "writ–writers" in the jail, if sufficient in number, to aid those unable to use the library themselves. On remand, if the latter alternative is contemplated, the district judge should determine the extent to which any significant number of inmates are incapable of using the library without assistance and whether indeed there are enough writ–writers with sufficient time apart from their own cases to aid these inmates.

(5) Finally, the plaintiffs contest the lower court's finding that there is adequate access to the courts through assistance of counsel. In our last decision in this case, we remanded because "the findings of fact [did] not demonstrate that inmates wishing to file either habeas corpus petitions . . . or civil rights actions . . . have access to counsel." 515 F.2d at 332. This concern was echoed by the court in *Bounds* when the Court stated that "encompassed by the right of access" are "federal habeas corpus or state or federal civil rights actions." 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17. The lower court's findings of fact are again deficient in that it appears that inmates are not afforded counsel in conjunction with the *initiation* of these two types of actions.[22] Unless the library adequately provides access to the courts for all inmates, some other assistance should be available for the initiation of habeas corpus and civil rights actions. This issue must be reconsidered on remand.

*Conclusion*

The district court should not have ruled on the merits once it had denied certification. Furthermore, several of the rulings below indicate that the plaintiffs' contentions were not adequately considered. We are loath to remand again, but we feel required to do so. The plaintiffs have not yet obtained from the district court considerations of their claims for the relief requested. As stated in *Bounds*, access to the courts may be provided in whatever manner the state desires. However, neither a law library by itself, nor assistance of counsel or of other persons trained in the law *after* initiation of a claim, may be "adequate" unless all inmates do in fact have access to the courts as mandated by *Bounds*.

*Summary*

The improper denial of class certification requires that we again reverse and remand.

---

21. In *Fluhr v. Roberts*, 460 F.Supp. 536, 537 (W.D.Ky. 1978), the court held that *Bounds* does not require a "full-scale law library staffed by professional library scientists" in a jail housing 400 to 650 inmates. However, we do not think that the issue is solely one of size. The central tenet of *Bounds* is that inmates should have meaningful access to the courts. The instant case involves a jail in San Antonio, and the plaintiffs claim that there are illiterate inmates and inmates who do not speak English. Given such contentions, the district court should look at all the circumstances to determine whether *all* inmates have meaningful access to the courts. Under the facts of this case, it may well be that such access cannot be provided without some type of paralegal or paralibrarian assistance.

22. See Findings of Fact XXII and XXIII in the Magistrate's Findings and Recommendations filed December 16, 1977, which indicate that attorneys are appointed only after it has been determined that a hearing is necessary. As indicated in *Bounds*, this is not sufficient; inmates are entitled to either access to legal materials or access to counsel for assistance in *filing* habeas corpus and civil rights actions. 430 U.S. at 825–29, 97 S.Ct. at 1496–98.

On remand, the district judge, with the benefit of the full factual development that will necessarily result from this remand, may be able finally to consider or determine the merits of the plaintiffs' claims.

REVERSED AND REMANDED.