Ray WARD, Plaintiff-Appellant,

v.

Haydee KORT, Defendant-Appellee.

No. 82–1418.

United States Court of Appeals,
Tenth Circuit.

May 20, 1985.

Alfred J. Coco, Denver, Colo., for plaintiff-appellant.

M. Tracy James, Asst. Atty. Gen., Human Resources Section, Denver, Colo. (Duane Woodward, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Solicitor Gen., Denver, Colo., were also on brief), for defendant-appellee.

Debra J. Moore and Brian M. Barnard, Salt Lake City, Utah, on brief, for Brian Logan, as amicus curiae.

Before HOLLOWAY, Chief Judge, and BARRETT and DOYLE, Circuit Judges.

HOLLOWAY, Chief Judge.

Plaintiff timely appeals the district court's affirmance and adoption of the recommendation of the magistrate that plaintiff's claim made under 42 U.S.C. § 1983 of a denial of the right to meaningful access to the courts be dismissed. The controlling questions are (1) whether mental patients under commitment after being found not guilty of an offense by reason of insanity, as is the plaintiff, are within the constitutional guarantee of access to the courts as has been recognized with respect to persons imprisoned under criminal convictions; and if so (2) whether the Colorado contract arrangement with a Pueblo law firm for some 12 hours of service per week, but not including the preparation or filing of any legal proceedings, violates such a guarantee, Colorado having elected not to provide any law library facilities for the mental hospital and there being no law library facilities there available for such inmates.

We decide both questions in favor of plaintiff and reverse and remand for further proceedings to redress the constitutional deprivation by a modification of the plan in effect at the hospital.

I

Plaintiff Ray Ward is a patient confined in the Forensic Ward of the Colorado State

Hospital at Pueblo. He has been a patient there since 1969 when he was committed pursuant to a finding that he was not guilty of an offense by reason of insanity. In November 1980 plaintiff filed a civil rights complaint, being granted leave to proceed in forma pauperis. His complaint asserted three claims including one of failure of the superintendent of the Colorado State Hospital to provide adequate access to legal materials and research materials, causing a denial of access to the courts. The other claims alleged in the complaint are not pursued on this appeal.

After a hearing, the magistrate found that the evidence established that the Colorado State Hospital has no library and that the only legal books available are the Colorado Revised Statutes in the administrative building.[1] None of the inmates are trained in the law and there is no system of paralegals to assist the patients at the hospital. The magistrate further found, however, that the Colorado State Hospital has provided adequate access to the courts by furnishing an attorney, under a contract arrangement, to assist the patients. I R. 19. More specifically, the magistrate stated in part:

The Colorado State Hospital has, for many years, entered into a contract with the law firm of Jenkins, O'Rourke & Breitenbach to provide legal counseling services for the patients at the Colorado State Hospital. The contract specifically provides as follows:

"The Contractor shall provide patient counselling (sic) at the rate of $16.00 per hour of service rendered not to exceed 12 hours per week, including office research and preparation, for the period of this agreement without further written approval.

The Contractor shall not, directly or indirectly, receive compensation from any patient resulting from consultation rendered under this contract."

Mr. Breitenbach testified that he provides services such as making wills, helping draft contracts and legal pleadings, handling disputes with the patients and the Colorado State Hospital. He further assists patients in contacting the public defender, legal services or private counsel where it is deemed appropriate. He will provide legal research assistance for a patient and assist him in drafting papers. He will not appear as counsel of record in any proceedings in a court of law. In civil rights or habeas corpus proceedings, he will assist the patient in obtaining the necessary forms from the United States District Court, help in drafting the pleadings and provide research or case material as requested.

Ray Ward testified that he had met with Mr. Breitenbach and discussed some of the issues set forth in the pleadings. Mr. Breitenbach informed him that he could not file the action for the plaintiff. The plaintiff did not pursue the action at that time nor did he request any legal research to be provided him by Mr. Breitenbach.

*Id.* at 18.

The magistrate concluded:

The Colorado State Hospital's procedures may not be perfect because of some lack of communication to the patients. Further, the time limitation in the contract of 12 hours per week may be limiting if legal demands by the patients upon the attorney increase. The present evidence does not show that the time limitation of the contract has affected the patients' rights. The contract in no way limits the attorney's right to counsel the patient even in actions against the Colorado State Hospital.

*Id.* at 19.

The magistrate recommended dismissal of the case and, as noted, the district judge affirmed and adopted the magistrate's findings and conclusions and dismissed the action. I R. 29.

---

1. The contract attorney testified that the set available at the administrative building is the "Colorado statutes annotated," which we assume is the Colorado Revised Statutes 1973 Annotated. Brief of Appellee, App. A, p. 8.

## II

### A.

■ On appeal, plaintiff contends that a right of access to the courts should be recognized for inmates confined under a civil commitment, as he is, to afford those patients a reasonable opportunity to identify their fundamental rights, to recognize violations of those rights, and to bring such violations before the courts for relief. For these purposes, he argues, the means of access to the courts provided by the Colorado State Hospital are constitutionally defective.

Plaintiff urges this court to apply the affirmative obligations of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), which dealt with such rights of convicted offenders, to mental institutions used for enforced confinement. Defendants under criminal charges who are found unfit to stand trial and are committed to a mental facility have already been held to have a constitutional right of access to the courts. *Johnson by Johnson v. Brelje*, 701 F.2d 1201, 1207 (7th Cir. 1983). We agree that there is no logic in holding that persons under mental commitments like plaintiff are on a lower plane than convicted inmates and are not entitled to protection of the basic constitutional guarantee of access to the courts. "Access to the courts of the United States is a constitutional right guaranteed by the due process clauses of the fifth and fourteenth amendments .... This right of access to the courts cannot be infringed upon or burdened," as Chief Judge Lewis wrote in *Silver v. Cormier*, 529 F.2d 161, 163 (10th Cir.1976). *See Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); *McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir.1984) (en banc). We hold that plaintiff, as a person under a mental commitment, is entitled to protection of his right of access to the courts.

Indeed, the State does not appear to dispute this proposition and instead merely argues that the means afforded at the hospital are adequate to protect this right. We turn now to that question.

### B.

■ Plaintiff says that the legal services provided at the Colorado State Hospital do not afford meaningful access to the courts as defined by *Bounds* because (1) the contract provides too little an allocation of counsel's time to fulfill the needs of the patients; (2) the contract does not provide for any representation; and (3) the contract does not provide for adequate research on behalf of the patients. Brief of Appellant 12.

As stated for the Supreme Court by Justice White,

> [t]he right of access to the courts, upon which [*Johnson v.*] *Avery* was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.

*Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974).

> The Supreme Court has held that the Constitution guarantees inmates ... a right [of access to courts], *see Bounds v. Smith*, 430 U.S. 817 [97 S.Ct. 1491, 52 L.Ed.2d 72] (1977), in both habeas corpus, *Johnson v. Avery*, 393 U.S. 483 [89 S.Ct. 747, 21 L.Ed.2d 718] (1969), and civil rights actions, *Wolff v. McDonnell*, 418 U.S. 539, 577–80 [94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935] (1974)." [2]

*Rudolph v. Locke*, 594 F.2d 1076, 1078 (5th Cir.1979). *See also In re Green*, 669 F.2d 779, 785 (D.C.Cir.1981); *Cruz v. Hauck*, 627 F.2d 710, 721 n. 22 (5th Cir.1980); *Carter v. Mandel*, 573 F.2d 172, 173 (4th Cir. 1978) (per curiam).

(The scope of the right of access should be described broadly enough to include the assertion by a prisoner of at least any fundamental right whether or not it is raised in a section 1983 action.).

---

2. Both habeas and civil rights actions "serve to protect basic constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974); *Cf. Does Bounds Have Bounds?* 53 Ind.L.J. 207, 219 (1978)

In *Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498, the Supreme Court held that the "right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers." The Court further noted that its main concern was " *'protecting the ability of an inmate to prepare a petition or complaint,' Wolff v. McDonnell,* 418 U.S. at 576 [94 S.Ct. at 2984] ..." (emphasis added). 430 U.S. at 828 n. 17, 97 S.Ct. at 1498 n. 17; *see Nordgren v. Milliken,* 762 F.2d 851, 854 (10th Cir.1985), filed today; *Ramos v. Lamm,* 639 F.2d 559, 584–85 and n. 29 (10th Cir.1980) (Where alternatives to adequate library were considered, assistance to inmates was inadequate where evidence of State failed to show library clerks capable of helping any inmate draft a legal document.), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The Supreme Court has stated:

> Although it is essentially true, as petitioners argue, that a habeas corpus petition or civil rights complaint need only set forth facts giving rise to the cause of action, but see, Fed.Rules Civ.Proc. 8(a)(1), (3), it hardly follows that ... legal assistance is not essential to frame such documents. It would verge on incompetence for a lawyer to file an initial pleading without researching such issues as jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and types of relief available. Most importantly, of course, a lawyer must know what the law is in order to determine whether a colorable claim exists, and if so, what facts are necessary to state a cause of action.

(footnote omitted). *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496. The Supreme Court also stated that "[a] source of current legal information would be particularly important so that prisoners could learn whether they have claims at all, as where new court decisions might apply retroactively to invalidate convictions." *Id.* at 826 n. 14, 97 S.Ct. at 1497 n. 14. The Court further said that "the need for new legal research or advice to make a meaningful initial presen-

tation to a trial court" in original actions seeking new trials, release from confinement, or vindication of fundamental civil rights, "is far greater than is required to file an adequate petition for discretionary review." (footnote omitted). *Id.* at 827–28, 97 S.Ct. at 1497–98.

As explained below, the constitutional infirmity in the Colorado plan in effect at the hospital is directly related to this concern for protecting the ability of an inmate to prepare a federal habeas or civil rights complaint. Concerning legal assistance actually provided to patients in habeas corpus and civil rights actions Mr. Breitenbach testified:

> BREITENBACH: Now, you asked about 1983 and federal court. Basically, I don't hold myself out as an expert in civil rights law. I have discussed it with them, I—and give them some general principles; discussed their problems with them and say that they should contact a private attorney. Even if they you know want to sue the hospital, sue the doctor, sue the staff—whatever their complaint is I certainly don't discourage it. I have at times attempted to get representation for people if they have the cause of action that they don't ... and they cannot afford to retain an attorney. *But, I do not draft the pleadings for them, we don't type them. I advise them that it's my opinion and understanding that the clerk of the federal district court has a package for civil rights actions that they send to the patient—we advise them of that. But, we don't get into drafting it, nor do we get into typing it for them because we would just be inundated. We don't have the facilities.*
>
> SAMMONS: Do you follow approximately the same procedure if the patient should ask about a 19 ... excuse me, about a habeas corpus proceeding?
>
> BREITENBACH: Federal?
>
> SAMMONS: Yes.
>
> BREITENBACH: Yes.

Tape 28, Side B. (emphasis added). He also testified:

> MAGISTRATE ABRAM: Mr. Breitenbach—the habeas corpus or the 1983 actions—you apparently have done, you have given them legal information, how to file the form, where they can locate the form?
>
> BREITENBACH: Yes, your honor.
>
> MAGISTRATE ABRAM: Have you ever assisted in filling out the form?
>
> BREITENBACH: No, but I have reviewed some in some instances where a patient has prepared one—I've reviewed it with him and I've given him my ideas as to what they should add to it or whatever. They've asked me to do that and I've done it. But I've never typed them, and I've never drafted one for them.
>
> MAGISTRATE ABRAM: This is available to forensic patients? Those committed on the criminal statutes or those in on the civil statutes?
>
> BREITENBACH: All the patients in the hospital, even if they happen to be transfers from the state penitentiary.

Brief of Appellee, App. A, p. 11.

Insofar as the findings adopted by the district court were intended to state that the contract attorney adequately, under *Bounds* and related cases, carried through to the completion of a federal habeas or civil rights complaint, they are not supported by substantial evidence and are clearly erroneous. Under *Bounds*, the State is free to make a choice between affording law library facilities on a reasonable basis, or the alternative means of having available counsel on a reasonable basis. With respect to the Colorado State Hospital, the State has at present chosen the latter means, but on such a severely restricted scale as to be clearly inadequate under the constitutional standard. The assistance given does not include preparation by counsel of a federal habeas or civil rights complaint, or close guidance by counsel of hospital inmates through the completion of such complaints for asserting a constitutional claim, with adequate research. There is no evidence that Mr. Breitenbach researched any issues such as "jurisdiction, venue, standing, exhaustion of remedies, proper parties plaintiff and defendant, and types of relief available." *Bounds*, 430 U.S. at 825, 97 S.Ct. at 1496. Nor do we find any evidence that Mr. Breitenbach determined whether a colorable claim existed, for a habeas or a civil rights action, and if so, what facts were necessary to state a cause of action. As noted, the attorney said he did not hold himself out as an expert in civil rights law—one of the primary areas entitled to protection under the right of access to the courts. We are mindful of the fact that the contract attorney does prepare petitions for release of inmates under Colorado law and does afford other helpful counselling on various civil matters. Nevertheless, in the critical areas of federal habeas proceedings and federal civil rights claims, the constitutional deficiency is clear from this record.

We do not depart from our holding of long-standing that there is no constitutional right to representation by counsel in habeas proceedings in the federal courts, *see Flowers v. State of Oklahoma*, 356 F.2d 916, 917 (10th Cir.1966), and in civil rights actions it is not mandatory but within the discretion of the federal court whether to request an attorney to represent an indigent party under 28 U.S.C. § 1915(d). *Harbolt v. Alldredge*, 464 F.2d 1243, 1245 (10th Cir.), *cert. denied*, 409 U.S. 1025, 93 S.Ct. 473, 34 L.Ed.2d 319 (1972). We are convinced, however, that under the teachings of *Bounds* and the cases cited, there is a constitutional infirmity in the present arrangement at the Colorado State Hospital, infringing the right of access to the courts.

Since the State has elected not to make available any law library materials, plaintiff's right of access to the courts must be protected by a modification of the contract arrangement selected by the State so that plaintiff will have assistance of counsel through the completion of a federal habeas or civil rights complaint, including necessary research and consideration of the

facts and the law.[3] Such a complaint will then be ready for filing by the indigent plaintiff so that the matter can be properly brought to the attention of the court. With the matter before the court, a federal judge would have discretion under 28 U.S.C. § 1915(d) to request counsel to represent the indigent plaintiff. We are convinced that if the federal claim is asserted in a state court, equal concern will be given by the state judges to a substantial claim of violation of federal constitutional rights. But in either case, such protection of plaintiff's rights will follow the Supreme Court's teaching that " '[m]eaningful access' to the courts is the touchstone." *Bounds*, 430 U.S. at 823, 97 S.Ct. at 1495.

### III

For these reasons the order dismissing plaintiff's case is reversed. The cause is remanded for further proceedings to determine proper relief for the development of a reasonable plan to correct the constitutional deficiency and to assure plaintiff's right of access to the courts in accord with the constitutional guarantees.

BARRETT, Circuit Judge, dissenting:

I respectfully dissent. I believe the State of Colorado satisfies the requirements of *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and like decisions, in providing the contract attorney firm to counsel mental patients under commitment after being found not guilty of a criminal offense by reason of insanity. This service, in my view, provides meaningful access to the courts in respect to the inmates' 42 U.S.C. § 1983 claims.

It is a matter of common knowledge that all of the district courts in our circuit supply inmates who desire to file either 42 U.S.C. § 1983 claims or habeas corpus claims with forms easily understood and which, with simple guidance, may be completed for filing. In this case, the record shows that the law firm does procure the forms, reviews them and advises the inmates concerning their proper completion for filing. Nothing more is constitutionally required.

The majority opinion would seem to require some expertise on the part of the law firm for counseling in the area of civil rights. A private person with a justifiable cause would not be entitled, *ipso facto*, to an expert. If financially able, he or she could obtain the services of such an expert upon payment of a fee. If entitled to legal aid such as that provided to indigents by Legal Services, such aid does not include an "expert" counselor. In most cases the private litigant contacts his general practitioner and seeks his advice and counsel.

It is unreasonable to expect the State of Colorado or any other state to provide "adequate" law libraries not only at its penal facilities, but, in addition, at its hospitals treating inmates for mental disorders following their commitments after having been found not guilty of a criminal offense by reason of insanity. There is no magic in producing the money to fulfill such a requirement. Quite obviously, the funds are hard to come by when one considers the heavy demands on government services overall. The requirements which have been imposed by the federal courts upon state authorities to build, maintain and provide physical facilities and support personnel at state penal institutions are staggering in terms of available state resources for all governmental needs.

There is no right under *Bounds* to legal representation in civil litigation. The advisement and counseling provided in this case does not deny the appellant access to the courts. Ward's complaint is vague, uncertain and posed in a shotgun manner. An "expert" in the area of § 1983 would, I

---

**3.** *But see Corpus v. Estelle*, 551 F.2d 68, 70 (5th Cir.1977) (stating that reasonable access to the courts must include access in general civil matters including but not limited to divorce and small civil claims).

Since *Bounds* was decided, the Fifth Circuit has emphasized that the holding in *Bounds* protects the right of access to the courts with respect to both civil rights and habeas actions. *Rudolph v. Locke*, 594 F.2d 1076, 1078 (5th Cir.1979).

believe, have difficulty positing his claims under the federal constitution and/or laws of the United States.

For some time, the federal courts have reviewed state prison facilities and conditions, generally under Eighth Amendment cruel and unusual punishment claims. The Supreme Court of the United States admonished us to move with caution in this area in *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). That case involved a constitutional challenge to Ohio's double-celling requirement at a state penal facility. Under the cruel and unusual punishment provisions of the Eighth Amendment, the Supreme Court rejected the challenge and held that the record did not evidence conditions proving that unnecessary or wanton pain was being inflicted on the Ohio inmates or that the punishment was disproportionate to the crimes committed. Significantly, Justice Powell, writing for the majority, stated that "[T]o the extent that such conditions [of confinement] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, 101 S.Ct. at 2399. And, significantly, the majority pointedly observed that state legislatures and state prison officials can properly weigh considerations affecting the adequacy of prisons because they are sensitive to the dictates of the Constitution.

I would uphold the district court's affirmance and adoption of the recommendations of the magistrate.