Bobby BATTLE, et al.
Plaintiffs/Appellants,

v.

Park ANDERSON, et al.,
Defendants/Appellees,

and

United States of America,
Plaintiff/Appellee-Intervenor.

No. 84–1026.

United States Court of Appeals,
Tenth Circuit.

April 16, 1986.

Louis W. Bullock, Cooperating Atty., ACLU, Tulsa, Okl., for plaintiffs/appellants.

Robert A. Nance, Asst. Atty. Gen., Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Oklahoma, was also on brief), for defendants/appellees.

* The Honorable William E. Doyle heard the argument in this appeal but did not participate after December 31, 1985, in this matter.

1. Since the district court held that conditions in the Oklahoma prison system violated the Eighth Amendment's proscription of cruel and unusual punishment in *Battle v. Anderson*, 376 F.Supp. 402 (E.D.Okla.1974), the litigation concerning constitutional compliance has been ongoing. *See Battle v. Anderson*, 447 F.Supp. 516 (E.D.

Michael A. Carvin, Atty., Dept. of Justice, Washington, D.C. (William Bradford Reynolds, Asst. Atty. Gen., Charles J. Cooper, Deputy Asst. Atty. Gen., Brian K. Landsberg and Dennis J. Dimsey, Attys., Dept. of Justice, Washington, D.C., Gary L. Richardson, U.S. Atty., were also on brief), for plaintiff/appellee-intervenor.

Before HOLLOWAY, Chief Judge, and BARRETT and DOYLE*, Circuit Judges.

HOLLOWAY, Chief Judge.

## I

This § 1983 class action was initially commenced by inmate Bobby Battle, pro se, challenging various conditions of confinement at the Oklahoma State Penitentiary in 1972. The district court held that conditions in the Oklahoma prison system violated the Eighth Amendment proscription against cruel and unusual punishment. The subsequent history of the controversy is detailed in the opinions cited in the margin.[1]

In April, 1982, the district court entered an order that defendants "should have and do hereby have the authority indefinitely but not permanently to double-cell where necessary," 708 F.2d 1523 at 1526, following increases in the Oklahoma prison population. In October, 1982, the district court issued an opinion following an evidentiary hearing on its orders that had previously been entered. The court stated that although it would not conclude from the evidence that the system had become unconstitutional in its operation, it was clearly in a state of decline. 708 F.2d at 1539. The court continued jurisdiction over the case to insure that the Oklahoma prison system did

Okla.), *aff'd*, 564 F.2d 388 (10th Cir.1977); *Battle v. Anderson*, 457 F.Supp. 719 (E.D.Okla.1978), *remanded for further hearings*, 594 F.2d 786 (10th Cir.1979); *Battle v. Anderson*, 614 F.2d 251 (10th Cir.1980); *Battle v. Anderson*, 708 F.2d 1523 (10th Cir.1983) (per curiam), *cert. dismissed*, 465 U.S. 1014, 104 S.Ct. 1019, 79 L.Ed.2d 248 (1984); *see also Battle v. Anderson*, 541 F.Supp. 1061 (E.D.Okla.1982) (award of attorneys' fees).

not revert to an unconstitutional condition. *Id.* The court ordered that a statement of penal policy and detailed plan of action be filed.

This court affirmed, one judge dissenting. *Battle v. Anderson,* 708 F.2d 1523 (10th Cir.1983), *cert. dismissed,* 465 U.S. 1014, 104 S.Ct. 1019, 79 L. Ed.2d 248 (1984). The majority of the panel held that the district court did not abuse its discretion in continuing its jurisdiction to assure compliance with past decrees and to prevent a recurrence of unconstitutional conditions despite its finding that the system was then currently constitutional. *Id.* at 1537–40.

The instant controversy concerns events following that decision. In compliance with the district court's order, the State filed a detailed "Plan of Measures to be Taken to Assure Continued Constitutionality of Oklahoma's Prisons" in June, 1983, and in July the State filed a supplement to the Plan. In September, 1983, the court held an evidentiary hearing on the State's Plan and the State's motion to dismiss the case. Judge Bohanon recused in December, 1983, and the case was assigned to Chief Judge Seay. Following review of a portion of the record, he entered the order on appeal herein on December 30.

The court concluded that "since October 1982 to the present date the conditions of confinement in the Oklahoma prison system are constitutional and are not cruel and unusual punishment." X Jt.App. 237. The court noted that there had been "disturbances, problems, and inadequacies in the Oklahoma prison system since the court's last findings." *Id.* at 235. The court noted that there were four subjects of previous court orders still found to be inadequate and not in compliance—racial integration, access to the courts, equal protection guarantees for women, and vacating for human habitation the East and West Cellhouses of the Oklahoma State Penitentiary at McAlester. *Id.*

The court concluded nevertheless that the system was constitutional and "each area of continued violation has been specifically addressed by the State and is subject to a specifically planned remedy." *Id.* The court found that the State legislature and prison officials were aware of and sensitive to the constitutional requirements and that the court was satisfied "that there is no reasonable expectation that unconstitutional practices will recur in the conditions of confinement in the Oklahoma prison system." *Id.* at 238. Concluding that it was mindful of its obligation to enforce the constitutional rights of all persons, the court granted defendants' motion to dismiss the case in its entirety. However, the court concluded that "[a]ll of this court's orders and injunctions as modified heretofore remain in full force and effect." *Id.* at 239.

In May, 1984, the district court denied a motion by plaintiffs to stay the dismissal order. Responding to a complaint that the judge had not had the full record to review, the judge noted that he had had four of seven transcripts from the September hearing for review before entering the order; that he had all the transcripts containing plaintiffs' case-in-chief; and that he had earlier had the transcript volume with the testimony of the Governor and the Director of the Corrections Department. In denying the request for a stay, the court concluded that "[a]fter a careful review and study of the entire transcript, the court finds no reason to change its order of December 30, 1983, and the court reaffirms that order." *Id.* at 248. The court stated that "[a]lthough the court noted problems of compliance in certain areas, those areas were *not* held to be constitutional violations." *Id.* (emphasis in original).

On April 25, 1984, a panel of this court denied an application by the plaintiffs for a stay of the dismissal order, pending appeal. On May 25, 1985, plaintiffs filed a further motion for a stay of the dismissal order, pending appeal, contending that the State was housing inmates in the East and West Cellhouses in violation of the district court's order of May, 1979. The State responded that the inmates were temporarily housed in those cellhouses on May 13, 1985, as a result of a disturbance at another

State prison, and that the inmates were removed from them on May 28. Plaintiffs did not dispute these facts but did request that this court stay the dismissal order nevertheless. We denied the renewed application for a stay, stating that we would "consider the propriety and scope of the district court's December 30, 1983, order in our disposition of the pending appeal in this cause." A motion to reconsider that ruling was filed, but in view of our disposition of the case the motion becomes moot.

We turn now to the appellate arguments challenging the correctness of the district court's order of dismissal.

## II

Plaintiffs challenge the district court's holding that the prison system is constitutional. They argue that the system is unconstitutional with respect to access to the courts, racial integration, and equal protection guarantees for women—areas that the district court found to be "inadequate and not in compliance" with previous court orders. Plaintiffs also contend that the Oklahoma prison system, considering the totality of the circumstances, is in violation of the Eighth Amendment.

### A.

#### Access to the courts

■ Plaintiffs attack the defendants' reliance on inmate law clerks to provide meaningful access to the courts.[2] Brief of Appellant 40–42; Reply Brief of Appellants 18–20. We have previously noted, however, that "[u]nder *Bounds*, the State is free to make a choice between affording law library facilities on a reasonable basis, or the alternative means of having available counsel on a reasonable basis." *Ward*

*v. Kort*, 762 F.2d 856, 860 (10th Cir.1985). The district court's dismissal order stated:

> The court finds that the mandated minimums of adequate library facilities has not yet been met. *Bounds v. Smith*, 430 U.S. 817 [97 S.Ct. 1491, 52 L.Ed.2d 72] (1976). However, testimony from Mr. Larry Meachum, Director of the Department of Corrections of Oklahoma, at the September 1983 hearing, indicates and assures this court that libraries will be fully stocked and that plaintiffs have and will be assured continued access to courts.

X Jt.App. 235. In this connection, the defendants' Plan stated that the State intended "to continue their current approach to access to courts by providing both law libraries and trained inmate law clerks to assist inmates in framing legal issues for presentation to the court." X R. 113; *see id.* at 113–14.

There is record evidence that the Department of Corrections has a large or small library at each of the prison facilities. Inventories were admitted in evidence as Defendants' Exhibits 29, 30, and 31 respecting the major law libraries at the Oklahoma State Penitentiary, the Mabel Bassett Correctional Center, and the Joseph Harp Correctional Center. V Jt.App. 1041. Each library has a supervisor. The fact finder appointed by the district court had found an "appalling lack of essential legal books and reference materials at both major and minor law libraries." VIII Jt.App. 119. However, we note that the inventories do list a substantial volume of basic materials in the libraries. *See, e.g.,* Defendants' Exhibit 29 (containing extensive listing of law books at Oklahoma State Penitentiary Library). Further, defendants' Plan represented to the court that "the Department is continually updating and supplementing its law library inventories." X Jt.App. 114.[3]

---

**2.** The constitutional right of access to the courts has been found to rest on the guarantees of the Due Process Clauses of the Fifth and Fourteenth Amendments. *See Ward v. Kort,* 762 F.2d 856, 858 (10th Cir.1985).

**3.** In addition to the inventories of materials at the libraries, we note that the handbook "Civil

Procedure for Inmate Legal Research Assistants" itself covered basic principles on federal habeas corpus with chapters on the exhaustion doctrine, procedural default, issues cognizable, pleadings, preliminary procedure, and evidentiary hearings. Statutory materials and summaries on various cases from the Supreme Court

In light of the testimony, the documentary evidence, and the representations accepted by the district court, we hold that the finding of the court that there was no constitutional violation in this respect is not in error.

## B.

### The claim of racial discrimination

■ Earlier practices of racial discrimination in the Oklahoma prison system were chronicled in *Battle v. Anderson,* 376 F.Supp. at 410–11. In that opinion, the district court made conclusions of law on these practices, *id.* at 420–21, and entered orders designed to remedy the discrimination. *Id.* at 428–30. The State has endeavored since those orders to comply with the constitutional requirements.

In the instant proceeding there are numerous allegations of racial discrimination and segregation in the Oklahoma prison system, including discrimination in job assignments, dining hall seating, and cell assignments. Numerous examples are contained in the fact finder's March 1983 final compliance report, VIII Jt.App. 25–43, and in the arguments and record citations in the briefs of the plaintiffs-appellants in this phase of the controversy. Brief of Appellants 15–16, 43; Reply Brief of Appellants 12–14. The State and the United States as intervenor argue that the evidence supports a finding of nondiscrimination. Brief of State Defendants-Appellees 101–02; Brief for the United States as Appellee 26–28.

In addition, the plaintiffs-appellants argue that the trial court did not address these issues in the December 30, 1983 order of dismissal. In that regard, we note that the district court did make the following findings and conclusions respecting this claim of racial discrimination:

> Racial integration of the occupants of double cells is found to be almost non-existent in the Oklahoma prison system. Racial integration of cells is strictly by voluntary action only. However, a commitment by defendants to fully integrate is contained in the Defendants' Plan. The court finds the Defendants' Plan to be of sufficient remedial effect and has previously, in this order, approved and ordered its adoption.

X Jt.App. 235.

In view of the findings quoted above, we cannot agree with the plaintiffs-appellants that the trial court did not address the racial discrimination claim at all. Nevertheless, because of the several distinct questions clearly raised by the fact finder's findings and the specific issues joined by the parties, we must agree that the findings of the district court are not sufficient under Rule 52(a), Fed.R.Civ.P. We cannot perform our appellate function without adequate findings and conclusions by the trial court on this issue of fundamental constitutional importance. *Battle v. Anderson,* 614 F.2d 251, 256 (10th Cir.1980); *Squirtco v. Seven-Up Co.,* 628 F.2d 1086, 1902 (8th Cir.1980). Without expressing any view on the validity of the constitutional claim of racial discrimination, we hold that the findings and conclusions thereon are not sufficient due to the sharp conflict on the several claims of specific discriminatory treatment not addressed by the trial judge.

Accordingly, with respect to this claim of racial discrimination, the judgment of dismissal must be vacated and the case remanded on that claim for such further proceedings as the district court deems proper. In view of the intervening time lapse it may well be desirable that further evidence on this claim be received. After the further proceedings which the trial court finds proper are held, the district judge should then find the facts specially and state separately his conclusions thereon in detail, dealing with the various claims of racial discrimination in accordance with Rule 52(a).

## C.

### The claim of sex discrimination

■ Under the Equal Protection Clause, the plaintiffs-appellants argue vigorously

and the courts of appeals on habeas proceedings

were also included.

that women inmates in the Oklahoma prison system are subjected to discrimination in conditions of confinement, job assignments, training programs, mental and medical health services, and recreation. These were objections made by the plaintiffs to deficiencies in the fact finder's final compliance report. X Jt.App. 58–61. The specific claims arise from the fact that the State in a stipulation had agreed not to discriminate against inmates on various grounds, including sex, and had agreed further to provide equal access to various programs and work assignments. Brief of Appellants 22; Brief for the United States as Appellee 30 n. 22.

The district court's order of dismissal contains the following discussion of this issue:

> The court finds that equal protection guarantees for women inmates are inadequate in terms of programs, medical care, and exercise. However, Director Meachum testified there is a $62,000.00 current special appropriation for women's programs and detailed the specific remedies outlined in the Defendants' Plan. The court finds the proposed measures will continue constitutionality.

X Jt.App. 236.

With respect to the claim of violation of the Equal Protection Clause in the treatment of women inmates, we feel that the findings are not inadequate. The trial court specifically found inadequacies in terms of programs, medical care, and exercise. We feel that the remaining claims of inadequate housing were thus implicitly rejected. Furthermore, the trial judge specifically identified the testimony which he credited, that of Director Meachum. His testimony concerning a $62,000 current special appropriation for women's programs was identified. Moreover, the court concluded that the program laid out by Director Meachum would be constitutionally sufficient. We note that Director Meachum's testimony explained the reason for not having an intermediate health unit for the Mabel Bassett facility in the Oklahoma City area. He pointed out that they had a

psychiatrist assigned to the Mabel Bassett facility addressing the mental health needs of women. VII Jt.App. 95–97.

On consideration of the evidence relied on by the plaintiffs, the evidence cited by the trial judge, and the resolve shown in the testimony of Director Meachum to solve the problem, we cannot say that the findings and conclusions of the trial judge on this constitutional claim were in error.

### D.

### The Eighth Amendment claim

■ Plaintiffs further vigorously challenge the findings and conclusions of the district court which rejected their claim that the totality of the circumstances in the Oklahoma prison system amounts to cruel and unusual punishment in violation of the prohibition of the Eighth Amendment. More specifically, they seriously complain about overcrowding, food and kitchen facilities, ventilation, educational and training programs, medical and mental health services, and the occupation temporarily of the East and West Cellhouses at the Oklahoma State Penitentiary in violation of the May 4, 1979 order of Judge Bohanon.

In connection with this constitutional claim and the detailed complaints made, the district court's findings and conclusions against the plaintiffs were as follows:

> [T]he court finds that management problems exist in the Oklahoma system. Problem areas can be determined in food preparation and service, maintenance of equipment and facilities, distribution of clothing and essential supplies, and inmate idleness. These management problems exist despite the extremely professional staff of the Oklahoma prison system. These problems are found to be primarily a direct result of increases in prison population.
>
> Unfortunately, there will always be problems and inadequacies. We are considering a large, confined population of convicted felons, not a nursery school. As noted by Judge Barrett, "The *Rhodes* majority observed that harsh or restric-

tive conditions of confinement are part of the punishment criminal offenders justly receive because the Constitution does not mandate comfortable prisons. Justice Powell wrote that 'To the extent that such conditions [of confinement] are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' 452 U.S. [337] at p. 347 [101 S.Ct. 2392 at p. 2399, 69 L.Ed.2d 59]." *Battle v. Anderson,* supra at page 1535.

The court finds, considering the totality of circumstances, these inadequacies, problems, and shortcomings do not constitute cruel and unusual punishment under the test of *Rhodes. Rhodes v. Chapman,* supra at page 347 [101 S.Ct. at page 2399]. The court finds no evidence at this time to show that the plaintiffs' present conditions of confinement in the Oklahoma prison system have changed from one of constitutionality to unconstitutionality. Thus, the court finds that since October 1982 to the present date the conditions of confinement in the Oklahoma prison system are constitutional and are not cruel and unusual punishment.

X Jt.App. 236–37.

For reasons we will outline generally, from our review of the record testimony and exhibits, and from the arguments about the record evidence by plaintiffs, we conclude that the district court's findings were not clearly erroneous, that the conclusions drawn were supported by the findings and record, and that the determination of the court to dismiss the cause in its entirety, retaining in full force and effect the prior orders and injunctions against constitutional violations, was not in error.

We have noted that there are specific complaints concerning conditions of confinement, including overcrowding, food and kitchen facilities, ventilation, educational and training programs, medical and mental health services, and the temporary occupancy of the East and West Cellhouses. *See* Brief of Appellants 4–22, 30–36. However, the ban on cruel and unusual punishment prohibits conditions that "involve the wanton and unnecessary infliction of pain, [or are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see Whitley v. Albers,* —— U.S. ——, —— - ——, 106 S.Ct. 1078, 1082–86, 89 L. Ed.2d 251 (1986). Although prison inmates may not be deprived of the "minimal civilized measure of life's necessities, ... conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman,* 452 U.S. at 347, 101 S.Ct. at 2399.

A little over two years ago a panel of this court agreed that the overall conditions of the Oklahoma prison system at that time were constitutional. *Battle v. Anderson,* 708 F.2d at 1533, 1537. We have considered the plaintiffs' complaints and the arguments in their briefs concerning the evidence in this subsequent case and are not convinced that the findings of the district court are clearly erroneous. The State defendants and the intervenor United States have persuasively argued that the evidence of record does not demonstrate conditions of confinement constituting cruel and unusual punishment under the strict standard of *Rhodes v. Chapman.* *See* Brief of Defendants-Appellees 2–88; Brief for the United States as Appellee 15–23.[4]

---

**4.** The plaintiffs argue that they were denied due process when Chief Judge Seay entered his order of dismissal after having received only four of seven transcripts of the hearing held earlier before Judge Bohanon. Judge Seay had before him at the time of his dismissal the transcripts of the plaintiffs' entire case in chief, among other things, and the testimony of Governor Nigh and Director Meachum, and the exhibits were apparently available, including those we have cited earlier concerning access to the courts. In addition, in his ruling a few months later on the motion to stay his order, which was denied, the judge stated that he had at that time

We note one item in particular, the complaint that facilities at the Oklahoma State Penitentiary were not air-conditioned. The complaint concerning the heat was covered by the testimony of Mr. Hutto. The testimony was that the new housing units at the Oklahoma State Penitentiary were air-conditioned. IV Jt.App. 597. The East and West Cellhouses were not air-conditioned, but as discussed below, they were vacated, except for limited emergency use, in compliance with the orders of Judge Bohanon.

With respect to the East and West Cellhouses, the May 4, 1979 order of Judge Bohanon was that the State no longer house inmates at those East and West Cellhouses due to the inadequate facilities there. In the dismissal order of December 30, 1983, the district court noted that the State was not in compliance with that order, but was satisfied from the assurances of Director Meachum and Governor Nigh that the cellhouses would be vacated as soon as feasible. X Jt.App. 236.

On May 25, 1985, plaintiffs filed a motion for a stay pending appeal in this court stating that inmates were being housed in the East and West Cellhouses in violation of the May 4, 1979 order. The State responded to that motion, representing that the inmates were placed in the cellhouses on May 13, 1985, as the result of a disturbance at another state prison and that the inmates were removed from these East and West Cellhouses on May 28. Plaintiffs did not challenge these representations.

There was a further motion for a stay filed December 27, 1985, in which the plaintiffs again represented that some inmates had been placed into the East and West Cellhouses. However, this was again relat-ed to a riot problem and the defendants informed the plaintiffs' counsel that the forty-three inmates housed in the East Cellhouse following the riot were all removed by January 6, 1986. *See* Response of the United States to Appellants' Motion to Reconsider Order Denying Stay Pending Appeal 3. There was no dispute of those facts concerning the removal of the inmates from the East Cellhouse after the problem of temporary occupancy. We therefore conclude that the complaint concerning the East and West Cellhouses is not supported in our record, and we are not persuaded that these temporary emergency uses of the cellhouses should be held a constitutional violation.

In sum, we are not persuaded by the arguments of the plaintiffs and the evidence that the findings of the district court that there was no violation of the Eighth Amendment were clearly erroneous. In addition, we are not convinced that there was an abuse of discretion by the district court in determining to dismiss the cause as he did, retaining in force and effect the prior orders and injunctions against constitutional violations.[5] The majority in *Battle v. Anderson*, 708 F.2d at 1537, concluded that "a court should exercise supervisory power over the suit until it can say with assurance not only that eighth amendment violations do not presently exist but there is no reasonable expectation that unconstitutional conditions will recur." In dealing with the various issues before him, the district judge concluded that he was satisfied that the defendants intended permanent compliance with constitutional conditions in the Oklahoma prison system. X Jt.App. 232, 234–37. The Memorandum Opinion and Or-

reviewed the entire transcript of all the proceedings before Judge Bohanon.

5. As noted, the district court here expressly stated that "[a]ll of this court's orders and injunctions as modified heretofore remain in full force and effect." X Jt.App. 239. This is in accord with the principle that "[i]t has long been settled that the court's power to grant injunctive relief survives discontinuance of the illegal conduct. *E.g., United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1952)." *Battle v. Anderson,* 708

F.2d at 1538 n. 4. If the district court had intended any dissolution of the prior orders, its order "should have contained a definite provision for the dissolution" of those provisions. *Tucker v. Baker,* 185 F.2d 863, 865 (5th Cir. 1950). We are convinced that it is unmistakenbly clear that the orders and injunctions protecting the inmates against constitutional violations, as previously modified, were in no way intended to be relaxed and that they remain in full force and effect.

der stated that "this court finds that it is now satisfied that there is no reasonable expectation that unconstitutional practices will recur in the conditions of confinement in the Oklahoma prison system." *Id.* at 238.

We are convinced that the district court's conclusion was based on findings supported by the record and that the determination to dismiss in these circumstances was not in error or an abuse of discretion.

## III

As noted, there was a motion for a stay of the district court's dismissal order filed on May 25, 1985, by the plaintiffs. This court denied that motion, as noted, stating that we would consider the propriety and scope of the district court's December 30, 1983 order of dismissal in our disposition of the pending appeal. On December 27, 1985, the plaintiffs filed a motion to reconsider that order denying the May 25, 1985 motion for a stay. Because of the disposition we are making in this opinion, we find that motion now to be moot.

In addition, on February 4, 1986, the plaintiffs filed a motion for partial remand for the district court to make an appropriate award of attorney's fees *pendente lite.* In view of the fact that this court was proceeding to disposition of the case, we have deferred a ruling on that motion. Since we are making a partial remand of the case, the plaintiffs will have the opportunity to have the district court consider a further application of attorney's fees when those proceedings on remand occur. The trial judge should entertain any such motion with those proceedings.

## IV

Accordingly, for the reasons stated we make the following determinations and order as follows:

1. The order of dismissal of December 30, 1983, by the district court, which retained in full force and effect the previous orders and injunctions protecting the rights of the plaintiffs against constitutional vio-

lations, is AFFIRMED except with respect to the claim of racial discrimination discussed in Part II–B of this opinion. The plaintiffs may by further proceedings in the district court seek relief from any violations of those previous orders and injunctions protecting their constitutional rights.

2. The order of dismissal of December 30, 1983, is VACATED with respect to the claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment; as discussed in Part II–B of this opinion, the cause is REMANDED to the district court for further proceedings and the entry of findings and conclusions by the district court on that constitutional claim as directed by this opinion.

IT IS SO ORDERED.