10-3586-cv
*P.J., et al. v. CT Board of Ed., et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand thirteen.

Present:
>  DEBRA ANN LIVINGSTON,
>  RAYMOND J. LOHIER, JR.,
>  SUSAN L. CARNEY,
>
>  *Circuit Judges.*

_____

P.J., By & Through His Parents & Next Friends Mr. & Mrs. W. J., *et al.*,

>  *Plaintiffs-Appellants*,                    No. 10-3586-cv

IAN IAN KATZ, by and through his parents and next friends Mr. and Mrs. Mark Katz, *et al.*,

>  *Intervenors-Plaintiffs-*
>  *Appellants*,

v.

CT BOARD OF ED., EDUCATION, DEPT OF,
TIROZZI, GERALD, COMM.,

*Defendants-Appellees*.

_____

For Plaintiffs-Appellants:	DAVID C. SHAW, Bloomfield, CT.

For Defendants-Appellees:	DARREN P. CUNNINGHAM, Assistant Attorney General, *for* George Jepsen, Attorney General of the State of Connecticut, Hartford, CT.

Appeal from orders of the United States District Court for the District of Connecticut (Robert N. Chatigny, *J.*) denying Appellants' motion to compel discovery and motion alleging substantial noncompliance.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED**.

In 2002, the parties to this action entered into a settlement agreement (the "Agreement") concerning Appellees' alleged noncompliance with the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The Agreement enumerated five goals intended to encourage Appellees' compliance with IDEA as it concerned students with "intellectual disabilities." These goals were to "increase

2

. . . the percent" of students with intellectual disabilities placed in regular classes, "reduc[e]" the discriminatory identification of students with intellectual disabilities, "increase . . . the mean and median percent of the school day " students with intellectual disabilities spent with non-disabled students, "increase . . . the percent" of students with intellectual disabilities who attended the school they would attend if not disabled, and "increase . . . the percent" of students with intellectual disabilities who participated in extra-curricular activities with non-disabled students. The Agreement also contained a number of provisions to facilitate realization of the Agreement's goals, including monitoring and parental outreach requirements, and a section concerning the establishment of an expert advisory panel. The Agreement finally provided that the district court would retain jurisdiction "for enforcement" of the Agreement for five years, but limited the court's jurisdiction to reviewing "motions for substantial non-compliance" in the subsequent three years. The court's jurisdiction would end after eight years, that is, in 2010.

In 2009, Appellants filed a motion asserting that Appellees were in substantial noncompliance with the Agreement.[1] Appellants also sought discovery to press

[1]Appellants filed their initial motion asserting substantial noncompliance in 2008, but the motion was denied "for administrative purposes" without prejudice to refiling. *See, e.g.,* *P.J.,* et al. *v. Education,* et al., No. 91 Civ. 180 (RNC) (D. Conn.), Doc. No. 571.

3

their claim. The district court denied Appellants' motion to compel discovery, finding that the Agreement only required Appellees to provide "existing data" in its final three years. *See P.J.*, et al., No. 91 Civ. 180 (D. Conn.), Doc. No. 593. The district court later denied Appellants' motions asserting substantial noncompliance on the ground that Appellants failed to establish that Appellees had frustrated the essential purposes of the Agreement. *Id.*, Doc. Nos. 686, 706; *see also Joseph A. by Wolfe v. New Mexico Dep't of Human Servs.*, 69 F.3d 1081, 1086 (10th Cir. 1995) ("[T]he touchstone of the substantial compliance inquiry is whether Defendants frustrated the purpose of the consent decree — i.e. its essential requirements."). Appellants now argue that the district court erred in declining to order discovery and that it incorrectly applied the standard announced in *Joseph A.* for finding substantial noncompliance. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and issues on appeal.

*    *    *

The Agreement operates as a consent decree given the district court's continuing jurisdiction over it. *See Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 151-52 (2d Cir. 2009). Nevertheless, the ordinary rules of contract interpretation apply. That is, when the language of a decree is unambiguous, deference is paid to

4

its plain meaning. When the language is ambiguous, however, a court may consider extrinsic evidence to determine the parties' intent. *See Broad. Music, Inc. v. DMX Inc.*, 683 F.3d 32, 43 (2d Cir. 2012). Finally, the rules of contract interpretation "do not contemplate considering any provision of the contract in isolation but in the light of the obligation as a whole and the intention of the parties as manifested thereby." *United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cnty.*, 712 F.3d 761, 767 (2d Cir. 2013) (internal quotation marks omitted). In considering a district court's interpretation of the terms of a consent decree, we review conclusions of law *de novo* and findings of fact for clear error. *Broad. Music, Inc.*, 683 F.3d at 43.

Following a review of the record and relevant case law, we conclude that Appellants failed to establish that Appellees were in substantial noncompliance with the Agreement for largely the reasons set forth by the district court. Contrary to Appellants' argument, it is plain that the essential purposes of the Agreement were limited to the five goals set forth in Section II. As an initial matter, Section II is entitled "Goals and Outcomes." To find that each section of the Agreement contained "essential purposes" would be to ignore that terminology. Further, while the other sections of the Agreement outline specific steps for Appellees to undertake,

each of those steps supports the realization of the goals in Section II; none is an end in and of itself. For instance, Appellees' failure to improve disabled students' placements in regular classes would be an obvious violation of the Agreement. By contrast, their failure fully to institute a complaint resolution procedure while still recording progress toward achieving Section II's goals could be a comparatively inconsequential breach. *See Joseph A.*, 69 F.3d at 1086 ("To the extent that any stipulated criteria has not been met, the court must determine whether that failure is immaterial to the overall objectives or, on the other hand, whether it had a material adverse impact upon the overall [objectives of the Decree]."). Finally, the Agreement makes clear that the goals in Section II are quantitative and not qualitative. Each of the five goals speaks to a numerical improvement in the integration and classification of students with intellectual disabilities. The goals nowhere touch upon the quality of education provided. While Appellants request that we read such a requirement into the goals, we decline to do so where such a reading is not supported by the language of the Agreement.

Next, Appellees made significant progress toward accomplishing Section II's goals, posting large percentage gains on the integration of students with intellectual disabilities pursuant to the first, third, fourth, and fifth goals, and markedly

reducing discriminatory identification of such students pursuant to the second goal. While this progress was not continuous across the life of the Agreement, blame for that shortcoming cannot be placed on Appellees given their efforts to implement the Agreement in its final years, even after Appellees believed that they were no longer bound by the Agreement — a belief the district court deemed credible. In addition, the district court credited testimony provided by Appellees that progress slowed because the "easy" gains were made early in the life of the Agreement, a finding we will not disturb on appeal. While additional efforts by Appellees might have produced greater results, that alone is insufficient to support Appellants' motion where Appellees made great strides in achieving the Agreement's goals. Because Appellants have thus failed to establish that Appellees frustrated the essential purposes of the Agreement, we conclude that the district court properly denied Appellants' motion asserting substantial noncompliance.

Appellants finally argue that they were denied the ability to fully prosecute their motion when the district court denied them formal discovery. However, the Agreement clearly limited Appellants' discovery rights to "existing data" in the final three years of the Agreement. Further, the district court encouraged informal discovery between the parties and, as a result, Appellants were able to depose five

7

of Appellees' employees. Appellants were also able to engage in school visits prior to the evidentiary hearing on their motion. While Appellants may have preferred greater access to Appellees' records, they did not bargain for such access in the Agreement. Accordingly, the district court properly denied Appellants' motion to compel discovery.

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's orders denying Appellants' motion to compel discovery and motion alleging substantial noncompliance.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk